IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 18, 2017

## SEBASTIAN VALENTINO v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
No. 2015-I-930    Cheryl Blackburn, Judge

_____

### No. M2017-00448-CCA-R3-PC

_____

The Petitioner, Sebastian Valentino, appeals from the Davidson County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he received ineffective assistance from his trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

David M. Hopkins, Murfreesboro, Tennessee, for the appellant, Sebastian Valentino.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Glenn R. Funk, District Attorney General; and Megan McNabb King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

In November 2015, the Petitioner was charged by criminal information with one count of aggravated assault. That same month, the Petitioner pled guilty to the aggravated assault charge in exchange for a six-year sentence to be served on supervised probation and the dismissal of two other misdemeanor charges.

At the plea submission hearing, the trial court asked the Petitioner if he was taking any medication. The Petitioner responded that he had "an insulin pump that[ was] about to go out." The trial court asked the Petitioner if "it [was] affecting [his] ability to

understand what [he was] doing" and the Petitioner responded that it was not. The Petitioner stated that he had "thoroughly discussed" his case with trial counsel and that he was satisfied with trial counsel's representation. The Petitioner also stated that no one was forcing him to plead guilty. For the factual basis of the plea agreement, the prosecutor stated that the Petitioner pushed his girlfriend off of a moving train. The Petitioner stated that the State's recitation of the facts was "generally true," but corrected the prosecutor by stating that the victim was his wife, not his girlfriend.

That same month, a probation violation warrant was issued alleging that the Petitioner had violated his probation by using alcohol and committing new offenses. After the Petitioner refused to participate in the Veterans Court program, the trial court revoked his probation and ordered his sentenced to be served. The Petitioner filed a timely petition for post-conviction relief alleging that his guilty plea was not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. The petition alleged that trial counsel failed to properly investigate "the facts and circumstances" of the case, failed to properly investigate the Petitioner's mental health, and failed to ensure that the Petitioner received proper medical treatment while he was incarcerated pending the plea agreement.

The Petitioner testified at the post-conviction hearing that he did not push the victim off of the train. The Petitioner claimed that the victim jumped off the train because she "thought the train was going slow enough" to get off. The Petitioner further claimed that he got off of the train and flagged down help for the victim. The Petitioner recalled that the aggravated assault charge was dismissed by the general sessions court because the victim did not show up to the preliminary hearing. However, he met with trial counsel shortly after the preliminary hearing and trial counsel told him that the State "was going to knock it up to attempted murder if [he] didn't take a six[-]year deal."

The Petitioner testified that he "felt like [he] was being bullied into taking" the plea agreement because the State threatened him with an attempted murder charge and because he had "a diabetic pump [he] needed" refilled. The Petitioner explained that he had an insulin pump "in [his] stomach" and that it would click when the supply of insulin got low. The Petitioner claimed that his "energy [would get] low" and that he would "start getting delusional" when the insulin supply in his pump got low. However, the Petitioner admitted that he "had like a month's worth left" of insulin in his pump at the time he pled guilty. The Petitioner testified that he told trial counsel that his insulin pump needed refilling but that trial counsel did nothing "to make that happen." The Petitioner further testified that he was afraid that his insulin pump would not be refilled and that he "was going to die" if he did not get out of jail.

The Petitioner also testified that he informed trial counsel that he suffered from post-traumatic stress disorder (PTSD) and was "bipolar schizophrenic." The Petitioner

-2-

testified that he was prescribed medications for his mental health problems, but that he was not provided these medications while he was in jail. According to the Petitioner, the combination of not having his medications and his insulin pump running low caused him to be confused and unable to think clearly. The Petitioner claimed that he was "[d]iscombobulated" when he entered his guilty plea.

However, the Petitioner admitted that he reviewed the guilty plea with trial counsel and with the trial court before he entered it, that he stated he was satisfied with trial counsel's representation, and that he did not tell the trial court about his mental health issues or that his insulin pump was affecting his ability to understand what he was doing. The Petitioner claimed that he did not do so because trial counsel told him that if he "said anything out of the way [he] wouldn't get out." The Petitioner also admitted that he had prior convictions in seven states and that this was not the first time he had entered a guilty plea.

Trial counsel testified that he believed the Petitioner understood what he was doing and knowingly and voluntarily entered his guilty plea. Trial counsel recalled that the Petitioner's "primary concern was that he wanted to get out of custody." The Petitioner repeatedly told trial counsel that "his insulin pump had [a] limited supply and that [it] was running out." Trial counsel suggested that they "try for a bond reduction . . . [due to the Petitioner's] health issues," but the Petitioner "wasn't interested in that." So, trial counsel contacted the State much earlier than he normally would to negotiate a plea agreement.

Trial counsel testified that he repeatedly advised the Petitioner against accepting the State's offer because he did not think the State could prove its case. Trial counsel explained that the victim did not show up to the preliminary hearing and that he was unable to locate the victim. However, the Petitioner wanted to be released immediately and agreed to the State's offer and to be charged by criminal information. Trial counsel testified that because the case was charged by criminal information, the State did not provide any discovery prior to the plea agreement. Trial counsel recalled that the Petitioner stated that he suffered from PTSD, but trial counsel did not recall the Petitioner's stating that he was "bipolar schizophrenic" or that he was not receiving medication for his mental health issues.

On March 1, 2017, the post-conviction court entered a written order denying the petition. The post-conviction court concluded that the Petitioner's guilty plea was knowing and voluntary. The post-conviction court found that trial counsel was not ineffective in his investigation of the case or in his handling of the Petitioner's health issues. The post-conviction court concluded that the Petitioner accepted the plea agreement against the advice of trial counsel because the Petitioner "wanted to get out of custody as soon as possible." The Petitioner now appeals to this court.

## ANALYSIS

The Petitioner contends that his guilty pleas were not voluntarily and knowingly entered. The Petitioner argues that trial counsel was ineffective because trial counsel failed to adequately investigate the facts of the case and the Petitioner's "medical issues." The Petitioner further argues that he "was not competent to enter a plea . . . due to his mental and physical illnesses." The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

-4-

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). A petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

Alfonso C. Camacho v. State, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

Here, the Petitioner pled guilty against the advice of trial counsel. Trial counsel testified that he repeatedly advised the Petitioner against accepting the plea agreement because he did not believe the State could prove its case. Trial counsel also suggested to the Petitioner that they seek a bond reduction in order to address the Petitioner's concerns about his insulin pump. Trial counsel recalled that the Petitioner rejected this suggestion because he wanted to get out of jail as quickly as possible.

To that end, the Petitioner agreed to be charged by criminal information. Despite the expedited nature of the plea agreement, trial counsel attempted to locate the victim. With respect to the Petitioner's claim that trial counsel failed to properly investigate his case, the Petitioner presented no witnesses at the post-conviction hearing to support this claim. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that when a petitioner claims trial counsel failed to discover a witness, that witness should be presented at the post-conviction hearing).

Trial counsel did not recall the Petitioner's telling him about a "bipolar schizophrenic" diagnosis or that the Petitioner was not receiving prescribed medication while he was at the jail. Trial counsel recalled that the Petitioner repeatedly mentioned his insulin pump. However, at the plea submission hearing, the Petitioner stated that the insulin pump did not affect his ability to understand what he was doing. Based upon the foregoing, we conclude that trial counsel was effective in his representation of the Petitioner and that the Petitioner knowingly and voluntarily entered his guilty plea in exchange for his immediate release. Accordingly, we affirm the post-conviction court's denial of the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE